## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATELYN PAGLIA,<br><br>PLAINTIFF,<br><br>v.<br><br>PFIZER, INC.<br><br>DEFENDANT. | CAUSE NO:<br><br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Honorable Cynthia M. Rufe<br>In Re: Zoloft Products Liability Litigation;<br>MDL Docket 2342 |

1.       Plaintiff, KATELYN PAGLIA, by and through the undersigned counsel, hereby submits this Complaint against Defendant, PFIZER, INC.

2.       As more specifically pleaded below, Plaintiff maintains that the pharmaceutical drug ZOLOFT and/or sertraline hydrochloride (hereinafter collectively "Zoloft") is defective, dangerous to human health, unfit, and unsuitable to be marketed and sold in commerce, and lacked proper warnings as to the dangers associated with its use.

### I.       PLAINTIFFS

3.       KATELYN PAGLIA is a competent adult who was born in 1996.

4.       Plaintiff and Plaintiff's mother who, at all times relevant to the allegations in the Complaint, are residents of El Reno, Canadian County, Oklahoma.

5.       Plaintiff was born with congenital birth defects and other conditions as a result of her mother's ingestion of Zoloft. Plaintiff is represented in this action by Plaintiff's mother, who is her natural guardian and next friend.

6.       Plaintiff brings this action to recover medical and other expenses related to treatment resulting from Plaintiff's birth defect(s), disorder(s) and/or related illnesses, and for

general and special damages, including punitive damages, and such other relief as requested

herein for injuries suffered as a direct result of Plaintiff's mother's ingestion of Zoloft.

## II.   **DEFENDANTS**

7.      Defendant, PFIZER, INC., was, and still is, a corporation duly existing under and

by virtue of the laws of the State of Delaware with its principal place of business in New

York City, New York. Pursuant to Stipulation and Joint Pretrial Order *No.* 12 "Waiver of

Service," Defendant PFIZER, INC. agrees to accept service and return a waiver of service of

summons in accordance with the procedures outlined in Rule 4(d) of the Federal Rules of

Civil Procedure upon timely receipt, as set forth in Rule 4(m), of Notice of Lawsuit and

Request to Waive Service of a Summons delivered via certified mail to Pfizer, Inc., CT

Corporation System, 116 Pine Street, Third Floor, Suite 320, Harrisburg, Pennsylvania,

17101.

## III.   **JURISDICTION AND VENUE**

8.      Plaintiff incorporates by reference all of the above paragraphs as if set forth in full

herein.

9.      At all times material to this action, the parties to this litigation are citizens of

different states and this Court has original jurisdiction pursuant to 28 USCA § 1332.

10.      This is an action for damages which exceeds the sum of seventy-five thousand

dollars ($75,000.00).

11.      The United States District Court for the Eastern District of Pennsylvania is the

site of Multidistrict Litigation regarding claims of injury for Zoloft (sertraline hydrochloride)

Docket No. 12-MD-2342.

12.     Pursuant to Pretrial Order No. 11 (Doc. No. 264), the Honorable Cynthia Rufe indicated on October 17, 2012 that any case subject to transfer to these MDL proceedings may be filed directly in the Eastern District of Pennsylvania. This is a case that would be subject to transfer.

13.     Plaintiff has timely filed this lawsuit within the applicable statutory limitations period.

## IV.     GENERAL ALLEGATIONS

14.     Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

### PLAINTIFFS

15.     Plaintiff's mother took Zoloft as prescribed by her treating physician(s) while pregnant with Plaintiff. Plaintiff's mother continued to use Zoloft on the schedule and for the period of time prescribed by Plaintiff's mother's treating physician(s).

16.     Had Plaintiff's mother been adequately warned that Zoloft could cause congenital birth defects if ingested during pregnancy, she would not have taken the drug.

17.     When Plaintiff was born, Plaintiff was suffering from congenital defects.

18.     The defects suffered by Plaintiff were a direct result of Plaintiff's mother's ingestion of Zoloft during her pregnancy in a manner and dosage recommended and prescribed by Plaintiff's mother's doctor(s).

### DEFENDANTS

19.     The drug "sertraline hydrochloride" was and is advertised, analyzed, assembled, compounded, designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packed, produced, promoted, processed, researched, sold, and tested by

3

Defendants, their predecessors in interest and subsidiaries, under the trade name Zoloft ®, and is a member of a class of drugs known as "selective serotonin reuptake inhibitors" or "SSRIs."

20.        Zoloft was first approved for use in the United States by the FDA in 1991 for the treatment of major depression in adults.

21.        Under the FDA scheme, Defendants knew, as a New Drug Application applicant, that they must fully, truthfully and accurately disclose to the FDA data and information regarding a new drug's chemistry, proposed process, proposed model labeling which includes warnings about risks and side effects, test results for the drug, results of animal studies, results of clinical studies and the drug's bioavailability, because the data and information would be relied upon by the medical community, physicians, Plaintiff's mother's physicians, Plaintiff and other foreseeable prescribers and users of Zoloft once the NDA was approved.

22.        Under the FDA scheme, Defendants had a duty to ensure their warnings to the medical community were, and remain, accurate and adequate, to conduct safety surveillance of adverse events for the drug, to report any data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug, and to update the label when new safety information was obtained.

23.        Prior to Plaintiff's mother becoming pregnant, Defendants knew or should have known that taking Zoloft during pregnancy posed risks to the developing fetus. Defendants knew or should have known that Zoloft crosses the placenta, which could have important implications for the developing fetus.

24.      Prior to Plaintiff's mother becoming pregnant, Defendants knew or should have known that children were being born with congenital birth defects, heart defects, PPHN, and other similar conditions, to women who took Zoloft during pregnancy.

25.      Prior to the time that the Plaintiff's mother ingested Zoloft during her pregnancy, Defendants knew of the dangerous birth defects associated with the use of Zoloft during pregnancy from the preclinical studies and the subsequent published studies confirming these risks. Defendants took no action to adequately warn or remedy the risks, but instead, concealed, suppressed, and failed to disclose the dangers. Even in the face of the numerous published studies, Defendants continue to fail to warn of these dangers through revised drug labeling.

26.      Defendants had access to this information and knew that congenital birth defects would result from the use of Zoloft by women who became pregnant and the fact that physicians and consumers such as the Plaintiff's mother herein did not fully understand the risks associated with Zoloft.

27.      Defendants failed to fully, truthfully and accurately disclose Zoloft data to the FDA, Plaintiff's mother, and the Plaintiff's mother's physician(s), and as a result negligently, intentionally and fraudulently misled the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother about the risks to a fetus associated with the use of Zoloft during pregnancy.

28.      Through the Physicians' Desk Reference, drug package inserts, patient information forms, counseling warnings, literature, marketing materials and other labeling information for Zoloft, Defendants knowingly, intentionally and negligently disseminated incomplete, inaccurate, and/or misleading warnings and information about the true risks to a

fetus when Zoloft is ingested during pregnancy, which misled the medical community, physicians and Plaintiff's mother's physician(s).

29.     At all times material hereto, Defendants knew or should have known that most physicians were not aware of, or did not fully appreciate, the seriousness of the congenital birth defect risks associated with use of Zoloft, and that, consequently, there was a widespread tendency for physicians to prescribe Zoloft for use to women of childbearing potential. Consequently, Defendants knew or should have known that the warnings and labels, including but not limited to, package inserts and the Physicians' Desk Reference monograph for Zoloft, did not adequately inform physicians about the birth defect risks associated with Zoloft.

30.     Defendants failed to warn physicians and Plaintiff's mother herein adequately about the congenital birth defect risks associated with Zoloft, despite the fact that Defendants knew that physicians, the medical community, Plaintiff's mother, and others similarly situated relied on Defendants to disclose what they knew or should have known from a prudent review of the information that they possessed or to which they had access.

31.     Because of the misleading information that Defendants provided to physicians, Plaintiff's mother, and the FDA about the true congenital birth defects risks associated with the use of Zoloft, and because of the failure of Defendants to adequately inform physicians generally, including Plaintiff's mother's physician(s), about the true birth defect risks associated with the use of Zoloft,  Plaintiff's mother's physician(s) never informed her of any congenital birth defect risks associated with Zoloft. Indeed, it is believed that Defendants represented to physicians that Zoloft was safe for use by women of childbearing years and their unborn children.

6

32.     Defendants knew, or should have known, that the warnings, including but not limited to, the label and package insert for Zoloft did not disclose the true risks of birth defects from the use of Zoloft. Defendants failed to use reasonable care to modify the warnings, including but not limited to, the label and package insert for Zoloft, in order to warn physicians adequately about the true congenital birth defect risks from the use of Zoloft by women who became pregnant.

33.     During the entire time Zoloft has been on the market in the United States, FDA regulations have required Defendants to issue stronger warnings whenever there existed reasonable evidence of an association between a serious risk and Zoloft. The regulations specifically state that a causal link need not have been proven to issue the new warnings. Further, the regulations explicitly allowed Defendants to issue such a warning without prior FDA approval.

34.     Thus, prior to Plaintiff's mother's pregnancy, Defendants had the knowledge, the means, and the duty to provide the medical community and the consuming public with a stronger warning regarding the association between Zoloft and congenital birth defects, heart defects, PPHN, and other related conditions, through all means necessary, including but not limited to labeling, continuing education, symposiums, posters, sales calls to doctors, advertisements, and promotional materials, etc. Defendants breached this duty.

35.     Despite having extensive knowledge of the extreme risks associated with Zoloft, as well as the absolute duty to properly and adequately warn foreseeable users, Defendants never approached the FDA to alter the label for Zoloft so that it properly and adequately warned of the risks of birth defects associated with the drug.

7

36.      Defendants failed to disclose adequately the increased risk of congenital birth defects of Zoloft to the medical community and Plaintiff's mother. Defendants were aware that their failure to disclose this information to the medical community and Plaintiff's mother would result in serious injury and/or death to the children or unborn fetus of women who were prescribed Zoloft by a physician who was not aware of this information. By failing to disclose this information to the medical community and Plaintiff's mother, Defendants acted in a willful, wanton and outrageous manner and with evil disregard of the rights of Plaintiff's mother and Plaintiff, and this conduct caused serious and permanent injuries to Plaintiff.

37.      Defendants, their agents, servants, and employees acting in the course and scope of their employment, negligently and carelessly breached their duties to the medical community, Plaintiff's mother's physicians, Plaintiff's mother, Plaintiff, and other foreseeable users similarly situated, which breaches of duty include, but are not limited to:

    a.   failing to ensure Zoloft warnings to the medical community, physicians, Plaintiff's mother's physician(s) and Plaintiff's mother were accurate and adequate, despite having extensive knowledge of the risks associated with the drug;

    b.   failing in their obligation to provide the medical community, physicians, Plaintiff's mothers physician(s), and Plaintiff's mother with adequate and clinically relevant information, data and warnings regarding the adverse health risks associated with exposure to Zoloft, and/or that there existed safer and more or equally effective alternative drug products;

    c.   failing to conduct post market safety surveillance and report that information to the medical community, physicians, Plaintiff's mother's physician(s) and Plaintiff's mother;

    d.   failing to include adequate warnings and/or provide adequate and clinically relevant information and data that would alert the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother to the dangerous risks of Zoloft;

    e.   failing to continually monitor, test, and analyze data regarding safety, efficacy and the prescribing practices for Zoloft;

8

f.   failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of its warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Zoloft to the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother;

g.   failing to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of, among other things, congenital birth defects of Zoloft;

h.   failing to periodically review all medical literature regarding Zoloft and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Zoloft;

i.   failing to disclose the results of the testing and other information in their possession regarding the possibility that Zoloft can interfere with the proper development of an unborn fetus;

j.   failing to warn adequately the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother of the dangers of using Zoloft during pregnancy, including the risk of congenital birth defects;

k.   representing that Zoloft was safe for use during pregnancy when, in fact, Defendants knew or should have known that it was unsafe for this use and that Zoloft was associated with congenital birth defects;

l.   promoting and marketing Zoloft for use in pregnant women, despite the fact that Defendants knew or should have known that Zoloft was associated with an increased risk of congenital abnormalities;

m.   promoting and marketing Zoloft as safe and effective for use in pregnant women when, in fact, it was unsafe;

n.   promoting and marketing Zoloft for non-approved (off-label) uses and/or illegally over-promoting, marketing, advertising and selling Zoloft in a zealous and unreasonable way, without regard for the potential danger that it poses to an unborn fetus;

o.   failing to independently monitor their sales of Zoloft and the medical literature, which would have alerted them to the fact that Zoloft was widely over-prescribed to women of childbearing potential as a result of inadequate warnings, including those in the package inserts and PDR monographs for Zoloft, and as a result of the over-promotion of the drug;

p.  failing to act as a reasonably prudent drug manufacturer in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, marketing, packing, producing, promoting, processing, researching, selling, and testing of Zoloft; and/or

q.  failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with Zoloft use.

38.       As a direct and proximate result of Defendants' actions, upon information and belief, Plaintiff's mother's prescribing physician(s) were unaware, and could not reasonably know, or through reasonable diligence could not have reasonably known, that Zoloft exposed Plaintiff to the risks and injuries alleged herein, and that those risks were the direct and proximate result of Defendants' acts or omissions.

## INJURIES

39.       As a direct and proximate result of the conduct of Defendants as described herein, and as a result of the Plaintiff's mother's ingestion of Zoloft, Plaintiff suffers from physical injuries, some or all of which are permanent, and Plaintiff may suffer in future from other diseases or conditions which have not yet been diagnosed. Further, Plaintiff has sustained in the past and will sustain in the future, pain and suffering, mental anguish, embarrassment and humiliation, physiological injury, disability, and disfigurement caused by surgeries and procedures Plaintiff has already undergone, and the surgeries and procedures that Plaintiff will need to undergo in the future, the loss of enjoyment of the pleasures of life without the presence of congenital birth defects, and/or other related conditions, as well as past and future general and special damages, including past and future medical care and treatment, lost wages, and lost earning capacity.

40.       Plaintiff's serious injuries were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate,

misleading, materially incomplete, false, and otherwise inadequate information to the medical community, physicians, Plaintiff's mother's physician(s), pharmacists and Plaintiff's mother.

41.         Plaintiff, as result of Plaintiff's mother's ingestion of Zoloft, and as a direct and proximate result of the conduct of Defendants described herein, have suffered, and will suffer in the future, great emotional pain, mental anguish, and other serious injury and loss. These injures and damages were the foreseeable and proximate result of Defendants' acts and/or omissions, including, but not limited to, dissemination of inaccurate, misleading, materially incomplete, false, and otherwise inadequate information to the medical community, Plaintiff's mother's physician(s), pharmacists, and Plaintiff's mother.

42.         The Defendants are liable to Plaintiff for all general, special and punitive damages, as well as delay damages, and other relief to which Plaintiff is entitled by law.

## V.      CLAIMS FOR RELIEF

43.         Plaintiff sets forth the following statements and claims in the alternative, such that the sufficiency of this Complaint shall not be defeated by an inconsistency or insufficiency (if any) among any one or more of the alternative statements or claims.

## COUNT ONE - STRICT PRODUCT LIABILITY - FAILURE TO WARN

44.         Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

45.         Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that the warnings and other clinically relevant information and date which they distributed

regarding the risks of congenital birth defects associated with the use of Zoloft were inadequate.

46.      Plaintiff's mother, and the Plaintiff's mother's prescribing physician(s), did not have the same knowledge as Defendants, and no adequate warning or other clinically relevant information and data was communicated to them or to their physicians.

47.      Defendants had a continuing duty to provide consumers, including Plaintiff's mother and her physicians, with warnings and other clinically relevant information and data regarding the risks and dangers associated with Zoloft as it became or could have become available to Defendants.

48.      Defendants manufactured, marketed, promoted, distributed, and sold an unreasonably dangerous and defective prescription drug, Zoloft, in the stream of commerce, to healthcare providers empowered to prescribe and dispense Zoloft to consumers, including Plaintiff's mother, without adequate warnings and other clinically relevant information and data.

49.      Through both omissions and affirmative misstatements, Defendants misled the medical community about the risks and benefits of Zoloft, which resulted in injury to Plaintiff.

50.      Despite the fact that Defendants knew or should have known that Zoloft caused unreasonable and dangerous side effects, including congenital birth defects, they continued to manufacture, market, promote, distribute, and sell Zoloft without stating that there existed safer and more or equally effective alternative drug products and/or providing adequate clinically relevant information and data.

12

51.     Defendants knew or should have known that consumers, and Plaintiff,

specifically, would foreseeably and needlessly suffer injury as a result of Defendants'

failures.

52.     Defendants breached their duty to provide timely and adequate warnings,

instructions, and information, in the following particulars:

    a.  failing to ensure Zoloft warnings to the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother were accurate and adequate, despite having extensive knowledge of the risks associated with Zoloft;

    b.  failing in their obligation to provide the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother with adequate clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Zoloft, and/or that there existed safer and more or equally effective alternative drug products;

    c.  failing to conduct post-market safety surveillance and report that information to the medical community, Plaintiff's mother's physician(s), and Plaintiff's mother;

    d.  failing to include adequate warnings and/or providing adequate and clinically relevant information and data that would alert the medical community, Plaintiff's mother's physician(s), and Plaintiff's mother to the dangerous risks of Zoloft, including, among other things, the association with congenital birth defects;

    e.  failing to continually monitor, test, and analyze data regarding safety, efficacy, and prescribing practices of their marketed drugs, including Zoloft;

    f.  failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Zoloft to the medical community, Plaintiff's mother's physician(s), and Plaintiff's mother;

    g.  failing to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of, among other things, congenital birth defects of Zoloft;

    h.  failing to periodically review all medical literature regarding Zoloft and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of their warnings, efficacy, or safety of Zoloft;

     i.   failing to disclose the results of the testing and other information in their possession regarding the possibility that Zoloft can interfere with the proper development of an unborn fetus;

     j.   failing to warn adequately the medical community, the general public, and Plaintiff's mother of the dangers of using Zoloft during pregnancy, including the risk of congenital birth defects; and/or

     k.   representing that Zoloft was safe for use during pregnancy, when in fact, Defendants knew or should have known that Zoloft was unsafe for this use and that Zoloft was associated with congenital birth defects.

53.     Defendants continued to aggressively manufacture, market, promote, distribute, and sell Zoloft, even after they knew or should have known of the unreasonable risks of congenital birth defects from Zoloft.

54.     Defendants had an obligation to provide Plaintiff's mother and Plaintiff's mother's physician(s) with adequate and clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Zoloft, and/or that there existed safer and more or equally effective alternative drug products.

55.     By failing to provide Plaintiff's mother and Plaintiff's mother's physician(s) with adequate, clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Zoloft, and/or to inform them that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

56.     As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiff was exposed to Zoloft and as a result suffered, and continues to suffer, the injuries and damages as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $75,000.00, compensatory and punitive

damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT TWO - STRICT PRODUCT LIABILITY - DESIGN DEFECT

57.      Plaintiff incorporates by reference all of the above paragraphs as if set forth in full here in.

58.      Defendants manufactured, marketed, promoted, distributed, and sold Zoloft in the stream of commerce which was:

    a.  unreasonably defective in design because it is a teratogenic compound that unreasonably increased the risks of congenital birth defects;

    b.  defective in design and was not reasonably safe as intended to be used, subjecting Plaintiff to risks which exceeded the benefits of Zoloft;

    c.  defective in design, making use of Zoloft more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with Plaintiff's mother's underlying condition;

    d.  defective in design, making use of Zoloft more dangerous than the ordinary consumer would expect and more dangerous than other risks associated with like products;

    e.  defective in design in that Zoloft contained insufficient, incorrect, and defective warnings in that they failed to alert physicians and users, including Plaintiff's mother, of the risks of adverse effects; and/or

    f.  defective in design in that Zoloft was not safe for its intended use and was inadequately tested.

59.      Defendants knew and intended that Zoloft would be used by consumers, including Plaintiff's mother, without any inspection for defects, and that Plaintiff's mother and her physicians would rely upon the representations made by Defendants on Zoloft's product labels and otherwise.

60.      Prior to the sale and distribution of Zoloft, Defendants knew, or were reckless in not knowing, that Zoloft was in a defective condition.

61.     Plaintiff's mother used Zoloft for its intended purpose and could not have discovered any defect therein through the exercise of due care.

62.     At the time Defendants manufactured, marketed, promoted, distributed, and sold Zoloft, there existed safer and more or equally effective alternative drug products.

63.     As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiff was exposed to Zoloft, and as a result, suffered, and continues to suffer, injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $75,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT THREE - NEGLIGENCE

64.     Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

65.     At all times mentioned herein, Defendants were under a duty to exercise reasonable care in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, marketing, packing, producing, promoting, processing, researching, selling, and testing Zoloft to ensure that use of Zoloft did not result in avoidable injuries.

66.     At all times relevant to this lawsuit, Defendants owed a duty to Plaintiff and to consumers, including Plaintiff's mother and her health care providers, to assess, manage, and communicate the risks, dangers, and adverse effects of Zoloft, and to warn the medical

community, consumers, Plaintiff's mother, and Plaintiff's mother's physician(s) of those risks, dangers, and adverse effects.

67.        Defendants' duties included, but were not limited to, carefully and properly advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, marketing, packing, producing, promoting, processing, researching, selling, and testing Zoloft, which was placed in the stream of commerce, and providing adequate information regarding the appropriate use of Zoloft.

68.        Defendants negligently and carelessly breached the above-described duties by committing negligent acts and/or omissions, including, but not limited to, the following:

    a.  failing to ensure Zoloft's warnings to the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother were accurate and adequate, despite having extensive knowledge of the risks associated with Zoloft;

    b.  failing in their obligation to provide the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother with adequate and clinically relevant information, and data and warnings regarding the adverse health risks associated with exposure to Zoloft;

    c.  failing to conduct post market safety surveillance and report that information to the medical community, Plaintiff's mother's physician(s), and Plaintiff's mother;

    d.  failing to include adequate warnings and/or provide adequate and clinically relevant information and data that would alert the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother to the dangerous risks of Zoloft;

    e.  failing to continually monitor, test, and analyze data regarding safety, efficacy, and the prescribing practices for Zoloft;

    f.  failing to review all adverse drug event information (AER) and to report any information bearing upon the adequacy and/or accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Zoloft to the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother;

g.  failing to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of, among other things, congenital birth defects of Zoloft;

h.  failing to periodically review all medical literature regarding Zoloft and failing to report data, regardless of the degree of significance, regarding the adequacy and/or accuracy of its warnings, efficacy, or safety of Zoloft;

i.  failing to disclose the results of the testing and other information in their possession regarding the possibility that Zoloft can interfere with the proper development of an unborn fetus;

j.  failing to warn adequately the medical community, physicians, Plaintiff's mother's physician(s), and Plaintiff's mother of the dangers of using Zoloft during pregnancy, including the risk of congenital birth defects;

k.  representing that Zoloft was safe for use during pregnancy when, in fact, Defendants knew or should have known that Zoloft was unsafe for this use and that Zoloft was associated with congenital birth defects;

l.  promoting and marketing Zoloft for use with pregnant women, despite the fact that the Defendants knew or should have known that Zoloft was associated with an increased risk of congenital abnormalities;

m.  promoting and marketing Zoloft as safe and effective for use with pregnant women when, in fact, it was unsafe;

n.  promoting and marketing Zoloft for non-approved (off-label) uses and/or illegally over-promoting, marketing, advertising, and selling Zoloft in a zealous and unreasonable way, without regard to the potential danger that it posed for an unborn fetus;

o.  failing to independently monitor their sales of Zoloft and the medical literature, which would have alerted them to the fact that Zoloft was widely over-prescribed to women of childbearing potential as a result of inadequate warnings in the package inserts and PDR monographs for Zoloft, and as a result of the over promotion of Zoloft;

p.  failing to act as a reasonably prudent drug manufacturer in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, marketing, packing, producing, promoting, processing, researching, selling, and testing Zoloft;

q.  failing to perform adequate and necessary studies to determine and analyze the safety and risks associated with Zoloft's use;

r.   failing to use ordinary care in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, marketing, packing, producing, promoting, processing, researching, selling, and testing Zoloft so as to reveal and communicate the risk of congenital birth defects to the medical community, Plaintiff's mother's physician(s), and Plaintiff's mother;

s.   failing to accompany Zoloft with adequate information that would alert the medical community, Plaintiff's mother's physician(s), and Plaintiff's mother to the potential adverse side effects associated with the use of Zoloft and the nature, severity, and duration of such adverse effects;

t.   failing to conduct adequate post-marketing studies, non-clinical and clinical testing, and post-marketing surveillance and analyses to determine and communicate the safety profile and side effects of Zoloft;

u.   continuing to promote the safety and effectiveness of Zoloft, while downplaying the risks, even after Defendants knew or should have known of the risks of Zoloft;

v.   failing to provide consumers, such as Plaintiff's mother and Plaintiff's mother's physicians, with scientific data which indicated that Zoloft was unreasonably dangerous, and that there were no women of childbearing potential and/or pregnant women in whom the benefits of Zoloft outweighed the risks;

w.   being careless and negligent in that Defendants knew or should have known that Zoloft was a substance that would be actively transported through the placenta during pregnancy and could inhibit the health and development of the fetus;

x.   negligently and carelessly promoting Zoloft as safe and effective for use with women of childbearing potential and/or pregnant women when, in fact, it was unsafe;

y.   negligently and carelessly over-promoting Zoloft in a zealous and unreasonable way, without regard to the potential danger that it posed to an unborn fetus; and/or

z.   negligently and carelessly failing to act as a reasonably prudent drug manufacturer, distributor, marketer, promoter, or seller would under same or similar circumstances.

69.   Although Defendants knew or should have known that Zoloft caused unreasonably dangerous side effects, including congenital birth defects, Defendants continued to market Zoloft, despite the fact there were safer and more or equally effective alternative drug products.

70.     Defendants knew or should have known that individuals, such as Plaintiff, would suffer injury as a result of Defendants' failure to exercise ordinary care, as described above.

71.     The conduct of Defendants was a direct and proximate cause of Plaintiff's injuries. Defendants knew or should have known that Zoloft could be dangerous and unsafe for pregnant women and the developing fetus.

72.     As a direct and proximate result of the negligent acts and/or omissions of Defendants as set forth above, Plaintiff suffered, and will continue to suffer in the future, injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $75,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT FOUR – NEGLIGENT MISREPRESENTATION

73.     Plaintiff incorporates all allegations in the preceding paragraphs as if set forth in full herein.

74.     Defendants, from the time that Zoloft was first tested, studied, researched, first manufactured, marketed and distributed, and up to the present, made false representations, as previously set forth herein, to Plaintiff's mother and her prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, including, but not limited to, the misrepresentation that Zoloft was safe, fit, and effective for human consumption during pregnancy.

75.     At all times relevant hereto, Defendants conducted a sales and marketing campaign to promote the sale of Zoloft to women of child-bearing years and willfully

20

deceive Plaintiff's mother and her prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general as to the health risks and consequences of the use of Zoloft during pregnancy.

76.     Defendants made the foregoing misrepresentations without any reasonable ground for believing them to be true. These misrepresentations were made directly by Defendants, by sales representatives, detail persons and other authorized agents of said Defendants, and in publications and other written materials directed to Plaintiff's mother and her prescribing physicians and healthcare providers, the medical, scientific, pharmaceutical and healthcare communities, and the public in general, with the intention of inducing reliance and the prescription, purchase, and use of Zoloft.

77.     The foregoing representations by Defendants were in fact false, in that Zoloft is not, and at all relevant times alleged herein was not, safe, fit, and effective for human consumption during pregnancy, the use of Zoloft is hazardous to health of the unborn child, and Zoloft has a significant propensity to cause serious injuries to users including, but not limited to, the injuries suffered as described above. The foregoing misrepresentations by Defendants, and each of them, were made with the intention of inducing reliance and inducing the prescription, purchase, and use of Zoloft.

78.     In reliance on the misrepresentations by Defendants, Plaintiff's mother and her prescribing physicians and healthcare providers were induced to purchase and use Zoloft. If they had known of the true facts and the facts concealed by Defendants, they would not have used Zoloft and their reliance upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

79.     The conduct of Defendants was a direct and proximate cause of Plaintiff's injuries. Defendants knew or should have known that Zoloft could be dangerous and unsafe for pregnant women and the developing fetus.

80.     As a direct and proximate result of the negligent acts and/or omissions of Defendants as set forth above, Plaintiff suffered, and will continue to suffer in the future, injuries and damages, as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $75,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT FIVE - NEGLIGENT DESIGN

81.     Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

82.     At all times relevant to this lawsuit, Defendants owed a duty to consumers, including Plaintiff and Plaintiff's mother and her healthcare providers, to exercise reasonable care in the design of Zoloft.

83.     Defendants negligently and carelessly breached this duty of care to Plaintiff because they designed Zoloft which:

   a.  was and is unreasonably defective in design because it is a teratogenic compound that unreasonably increased the risks of congenital birth defects;

   b.  was and is defective in design and was not reasonably safe as intended to be used, subjecting Plaintiff to risks which exceeded the benefits of Zoloft;

   c.  was and is defective in design, making use of Zoloft more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with Plaintiff's mother's underlying condition;

22

   d. was and is defective in design, making use of Zoloft more dangerous than the ordinary consumer would expect and more dangerous than other risks associated with like products;

   e. was and is defective in design in that it contained insufficient, incorrect and defective warnings in that they failed to alert physicians and users, including the Plaintiff's mother of the risks of adverse effects;

   f. was and is defective in design in that it was not safe for its intended use and was inadequately tested;

   g. was and is defective in design because its risks exceeded any benefit of Zoloft; and/or

   h. failed to act as a reasonably prudent drug manufacturer, seller, promoter, distributor, or marketer would have acted with respect to the design of Zoloft.

84.    As a direct and proximate result of the negligent acts and/or omissions of the Defendants, Plaintiff suffered injuries and damages as set forth herein.

   **WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $75,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT SIX - FRAUD, MISREPRESENTATION AND SUPPRESSION

85.    Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

86.    Defendants is liable to Plaintiff for fraudulently, intentionally, and/or negligently misrepresenting to the public, and to Plaintiff's mother, both directly and by and through the Plaintiff's mother's prescribing physician(s), the safety and effectiveness of Zoloft when used by women of childbearing potential, and/or fraudulently, intentionally, and/or negligently concealing, suppressing or omitting material, adverse information regarding the safety and effectiveness of Zoloft when used by women of childbearing potential.

23

87.     Defendants' fraudulent, intentional, and/or negligent material misrepresentations and omissions regarding the safety and efficacy of Zoloft and of Zoloft's side effects, including the risk of congenital birth defects, were communicated to Plaintiff's mother directly through promotional materials, advertising, product inserts, and the monograph provided with Plaintiff's mother's prescription with the intent that the Plaintiff's mother use Zoloft. The safety and efficacy of Zoloft was also fraudulently, intentionally, and/or negligently misrepresented to the Plaintiff's mother's prescribing physician with the intent that such misrepresentations would cause Zoloft to be prescribed to the Plaintiff's mother.

88.     Defendants either knew or should have known that the material representations they were making regarding Zoloft's safety, efficacy, and side effects were false.

89.     Defendants fraudulently, intentionally, and/or negligently made the misrepresentations and/or actively concealed, suppressed, or omitted this material information with the intention and specific desire to induce the Plaintiff's mother, the Plaintiff's mother's physician(s), and the consuming public to use and prescribe Zoloft. Defendants fraudulently, intentionally, and/or negligently knew or should have known that the Plaintiff's mother, Plaintiff's mother's physician(s), and the consuming public would rely on such material misrepresentations and/or omissions in selecting Zoloft for the treatment of Plaintiff's mother. Defendants knew or should have known that the Plaintiff's mother and the Plaintiff's mother's physician(s) would rely upon their false representations and/or omissions.

90.     Defendants made these material misrepresentations and/or omissions and actively concealed adverse information at a time when they, their agents and/or their employees knew or should have known that Zoloft had defects, dangers, and characteristics that were other

24

than what had been represented to the medical community and the consuming public,

including Plaintiff's mother. Those misrepresentations and omissions further include, but are

not limited to, the following particulars:

    a.  Defendants failed to disclose or concealed that their pre-clinical and clinical testing, and post-marketing surveillance was inadequate to determine the safety and side effects of Zoloft;

    b.  Defendants failed to disclose or concealed data showing that Zoloft increased the risk of congenital birth defects;

    c.  Defendants failed to include adequate warnings with Zoloft about the potential and actual risks, and nature, scope, severity, and duration of any serious side effects of this drug, including, without limitation, the increased risk of congenital birth defects, other injuries and death, either compared to the use of alternative drug products in its class or compared to the use of no drug products; and/or

    d.  Defendants concealed and continue to conceal past and present facts, including that as early as the 1990s, Defendants were aware of and concealed their knowledge of an association between the use of Zoloft and dangerous side effects, including the increased risk of congenital birth defects, from the consuming public, including Plaintiff's mother and Plaintiff's mother's physician(s).

91.     Defendants' material misrepresentations and/or active concealment, suppression,

and omissions were perpetuated directly and/or indirectly by Defendants, their sales

representatives, employees, distributors, agents, and/or detail persons, through the databases,

printouts, monographs, and other information drafted, prepared, marketed, sold, and supplied

by Defendants, their sales representatives, employees, distributors, agents, and/or detail

persons.

92.     Defendants' material misrepresentations and/or active concealment, suppression,

and omissions constitute a continuing tort.

93.     Through its product inserts, Defendants continued to misrepresent the potential

risks and complications associated with Zoloft.

94.     Defendants had a post-sale duty to warn physicians and Plaintiff's mother about the potential risks and complications associated with Zoloft, which they manufactured and sold, in a timely manner.

95.     Defendants fraudulently, intentionally, and/or negligently misrepresented the safety and efficacy of Zoloft in their labeling, advertising, product inserts, promotional materials, or other marketing.

96.     If Plaintiff's mother and Plaintiff's mother's physician(s) had known the true facts concerning the risks of Zoloft, in particular, the risk of congenital birth defects, they would not have prescribed and used Zoloft, and would have instead prescribed and used one of the safer alternatives, or no drug.

97.     Plaintiff's mother and Plaintiff's mother's physicians' reliance upon the Defendants' material misrepresentations was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Zoloft, while Plaintiff's mother and Plaintiff's mother's physicians were not in a position to know the true facts, and because Defendants overstated the benefits and safety of Zoloft and, concomitantly, downplayed the risks of its use, including congenital birth defects, thereby inducing Plaintiff's mother and Plaintiff's mother's physician(s) to use Zoloft, in lieu of other, safer alternatives, or no drug at all.

98.     As a direct and proximate result of Plaintiff's mother and Plaintiff's mother's physician(s) reliance on Defendants' misrepresentations and concealment concerning the risks and benefits of Zoloft, Plaintiff suffered injuries and damages as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $75,000.00, compensatory and punitive

damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT SEVEN - CONSTRUCTIVE FRAUD

99.      Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

100.     At the time Zoloft was manufactured, distributed, and sold by Defendants to Plaintiff's mother, Defendants were in a unique position of knowledge concerning the safety and effectiveness of Zoloft, which knowledge was not possessed by Plaintiff's mother or the Plaintiff's mother's physician(s), and Defendants thereby held a position of superiority.

101.     Through their unique knowledge and expertise regarding the defective nature of Zoloft, and through their marketing statements to physicians and patients in advertisements, promotional materials, and other communications, Defendants professed that they were in possession of facts demonstrating that Zoloft was safe and effective for its intended use and was not defective.

102.     Defendants' representations to Plaintiff's mother's physician(s) were made to induce the purchase of Zoloft, and Plaintiff's mother and her physicians relied upon those statements when purchasing and administering Zoloft.

103.     Defendants took unconscionable advantage of their dominant position of knowledge with regard to Plaintiff's mother and her physicians and engaged in constructive fraud in their relationship.

104.     Plaintiff's mother and Plaintiff's mother's physician(s) reasonably relied on Defendants' representations.

105.     As a direct and proximate result of Defendants' constructive fraud, Plaintiff has suffered injuries and damages as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $75,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT EIGHT - BREACH OF EXPRESS AND IMPLIED WARRANTIES

106.     Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

107.     At all times hereinafter mentioned, upon information and belief, Defendants, by directly and indirectly advertising, marketing, and promoting Zoloft for the treatment of women, including women of childbearing potential and pregnant women, and by placing Zoloft in the stream of commerce knowing that Zoloft would be prescribed to pregnant women in reliance upon the representations or omissions of Defendants, expressly warranted to all foreseeable users of Zoloft, including Plaintiff's mother and Plaintiff's mother's physician(s), that Zoloft was safe and effective for the treatment of women during pregnancy and without significant risk to the fetus.

108.     Defendants impliedly warranted, in distributing, selling, advertising, marketing, and promoting Zoloft to all foreseeable users, including Plaintiff's mother and Plaintiff's mother's physician(s), that Zoloft was safe and effective for the purposes for which it had been placed in the stream of commerce by Defendants, including for the treatment of pregnant women, and that Zoloft was reasonably safe, proper, merchantable, and fit for its

intended purpose, including for the treatment of pregnant women and without significant risk to the fetus.

109.    At all times relevant hereto, Plaintiff's mother and Plaintiff's mother's physician(s) relied upon the aforesaid express and implied warranties by Defendants.

110.    Plaintiff's mother's use of Zoloft, and Plaintiff's mother's physician(s) prescribing of Zoloft was consistent with the purposes for which Defendants directly and indirectly advertised, marketed, and promoted Zoloft, and Plaintiff's mother's use of Zoloft, and the prescribing of Zoloft to Plaintiff's mother was reasonably contemplated, intended, and foreseen by Defendants at the time of the distribution and sale of Zoloft by Defendants, and, therefore, Plaintiff's mother's use of Zoloft was within the scope of the above-described express and implied warranties.

111.    Defendants breached the aforesaid express and implied warranties because Zoloft was not safe and effective for the treatment of women during pregnancy because it exposed the developing fetus to a significant risk of serious injury, and because Plaintiff's mother's use of Zoloft for treatment during her pregnancy caused Plaintiff's injuries.

112.    As a direct and proximate result of Defendants' breach of express and implied warranties, Plaintiff suffered injuries and damages as set forth herein.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $ 75,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT NINE - GROSS NEGLIGENCE/MALICE

113.     Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

114.     While performing each of the acts and omissions previously set forth in this Complaint, Defendants actually knew of the defective nature of their products and the inadequacy of their warnings as set forth herein, yet Defendants continued to author, create, design, distribute, edit, manufacture, market, sell and provide their products in their defective condition so as to maximize sales and profits at the expense of Plaintiff's health and the health of the consuming public.

115.     The acts and omissions of Defendants involved an extreme degree of risk given the probability and magnitude of causing harm to Plaintiffs and others.

116.     The Defendants had actual, subjective awareness of the risk of injury posed by Zoloft and the Zoloft information and warnings to consumers such as Plaintiff's mother. Moreover, a reasonable company in the position of the Defendants would have been aware of the risk of injury posed to consumers by the use of Zoloft and the Zoloft information and warnings. Yet, Defendants proceeded with conscious disregard to the rights, safety, and welfare of Plaintiff.

117.     The acts and omissions of Defendants demonstrate that they did not care about the peril to which they subjected Plaintiff, such that their conduct was grossly negligent.

118.     Further, the wrongs done by the Defendants were aggravated by the kind of malice, fraud, and reckless disregard for the rights of others, the public, and Plaintiff for which the law allows the imposition of exemplary damages in that the Defendants' conduct:

     a.     when viewed objectively from the Defendants' standpoint at the time of the conduct, involved an extreme degree of risk, considering the probability and

magnitude of the potential harm to others, and the Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others; and/or

b.  included a material representation that was false, with the Defendants knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation is acted on by Plaintiff's mother. Plaintiff's mother relied on the representation and Plaintiff suffered injury as a proximate result of this reliance.

119.    Plaintiff therefore seeks to assert claims for exemplary damages at the appropriate time under governing law in an amount within the jurisdictional limits of the Court.

120.    Plaintiff also alleges that the acts and omissions of Defendants, whether taken singularly or in combination with others, constitute gross negligence that proximately caused the injuries to Plaintiff. In that regard, Plaintiff will seek exemplary damages in an amount that would punish the Defendants for their conduct and which would deter other similar defendants from engaging in such misconduct in the future.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against the Defendants for an amount in excess of $75,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## COUNT TEN - PUNITIVE DAMAGES

121.    Plaintiff incorporates by reference all of the above paragraphs as if set forth in full herein.

122.    Plaintiff is entitled to punitive damages because the Defendants' actions were reckless and without regard for the public's safety and welfare. The Defendants knowingly withheld, concealed or misrepresented the risks and dangers of Zoloft and the Zoloft information and warnings, including the risk of congenital birth defects, from both the

medical community and the public at large, including Plaintiff's mother, Plaintiff's mother's physicians and pharmacists. Defendants downplayed, understated, and disregarded their knowledge of the serious and permanent side effects associated with the use of Zoloft, including congenital birth defects, despite information demonstrating that Zoloft was unreasonably dangerous and in conscious disregard of the risk of serious injury posed to Plaintiff by these known misrepresentations and/or omissions.

123.    Plaintiff is entitled to punitive damages because Defendants' actions were reckless and without regard for the public's safety and welfare. Defendants misled the medical community and the public at large, including Plaintiff's mother, Plaintiff's mother's physicians, and pharmacists, by making false representations about, and concealing pertinent information, regarding Zoloft and its information and warnings. Defendants downplayed, understated and disregarded their knowledge of the serious and permanent side effects associated with the use of Zoloft, including congenital birth defects, despite information demonstrating the product was unreasonably dangerous.

124.    At all times material hereto, the Defendants had a duty to exercise reasonable care in the advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, marketing, packing, producing, promoting, processing, researching, selling, and/or testing Zoloft.

125.    The conduct of the Defendants in advertising, analyzing, assembling, compounding, designing, developing, distributing, formulating, inspecting, labeling, marketing, packing, producing, promoting, processing, researching, selling, and/or testing Zoloft, and in failing to warn Plaintiff's mother, Plaintiff's mother's physician(s), pharmacists and other members of the public of the dangers inherent in the use of Zoloft,

which were known to the Defendants, was attended by circumstances of fraud, malice, or willful and wanton conduct, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, including Plaintiff.

126.     The Defendants knew that Zoloft had unreasonably dangerous risks and caused serious side effects of which Plaintiff's mother, Plaintiff's mother's physicians and pharmacists would not be aware. The Defendants nevertheless advertised, analyzed, assembled, compounded, designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packaged, produced, promoted, processed, researched, sold, and tested Zoloft, knowing that there were safer methods and products available.

127.     Defendants' actions were performed willfully, deliberately, intentionally, and with reckless disregard for the rights and safety of Plaintiff and the public and caused substantial financial injury.

128.     The conduct of Defendants, undertaken with knowledge for these purposes, evinces gross negligence and a willful, wanton, and conscious disregard for the rights and safety of consumers, including Plaintiff's mother and Plaintiff, and as a direct and proximate result of the Defendants' actions and inactions, Plaintiff suffered injuries due to Defendants' disregard for Plaintiff's rights and safety and, therefore, Plaintiff is entitled to an award of punitive damages from Defendants.

**WHEREFORE,** for the above reasons, Plaintiff demands judgment in her favor and against Defendants for an amount in excess of $75,000.00, compensatory and punitive damages, delay damages, and costs of suit in an amount to be determined upon the trial of this matter.

## VI.    JURY DEMAND

129.        Plaintiff demands that all issues of fact in this case be tried to a properly empanelled Jury.

## VII.    CONCLUSION AND PRAYER

**WHEREFORE,** Plaintiff requests trial by jury and that the Court grants her the following relief against Defendants, on all counts of this Complaint, including:

    a.   Money damages representing fair, just, and reasonable compensation for her respective common law and statutory claims in excess of $75,000.00;

    b.   Lost wages;

    c.   Punitive and/or treble damages pursuant to state law;

    d.   Attorneys' fees;

    e.   Pre-judgment and post-judgment interests as authorized by law on the judgments which enter on Plaintiff's behalf;

    f.   Costs of suit and expenses;

    g.   Delay damages; and

    h.   Such other relief as is deemed just and appropriate.

Dated: April 15, 2015

Respectfully Submitted,

Tor A. Hoerman, IL #6229439
Steven Davis, IL #6281263
Kenneth J. Brennan, IL #6239037
101 W. Vandalia Street, Suite 350
Edwardsville, IL 62025
Phone: (618) 656-4400
Fax: (618) 656-4401
Email:thoerman@torhoermanlaw.com
       sdavis@torhoermanlaw.com
       kbrennan@torhoermanlaw.com

**ATTORNEYS FOR PLAINTIFF**